**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **ASHIMA REED**, *et al*., | |
| **Plaintiffs,** | |
| v. | **Civil Action No. 14-1887 (JEB)** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

## MEMORANDUM OPINION

Reasonable attorney fees must be "adequate to attract competent counsel," but should not "produce windfalls to attorneys." Blum v. Stenson, 465 U.S. 886, 893-94 (1984) (citation omitted). Six Plaintiffs, who are parents and legal guardians acting on behalf of their children, have brought this action for the recovery of attorney fees and costs – pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.* – incurred in administrative proceedings against the District of Columbia Public Schools. Ruling on Cross-Motions for Summary Judgment, Magistrate Judge Alan Kay, to whom the case was referred, issued a Report and Recommendation granting approximately 40% of the total fees sought. Plaintiffs have now submitted their Objections to that Report. Finding that the Report largely applies the IDEA appropriately in calculating the correct amount due, the Court will accept the majority of its recommendations, albeit with some modifications.

## I.   Background

The Court will not reiterate the full factual background of the case, which is set out in the thorough Report. See R&R at 6-12. A brief recap here concerning each Plaintiff will suffice.

A.    S.R.

Plaintiff Reed, parent of minor student S.R., filed a Due Process Complaint in May 2013, alleging that S.R. was denied a free appropriate public education (FAPE) due to the District's alleged failure to identify, locate, and evaluate him as a student with a suspected disability.  Reed requested, *inter alia*, that the District fund independent and comprehensive assessments of S.R. and convene an individualized-education-program (IEP) team to review such assessments and determine S.R.'s eligibility for special-education services.  A due-process hearing was held that summer, and the Hearing Officer ordered the District to fund the requested assessments and determine whether S.R. was indeed eligible for special-education services.  See R&R at 6-7; Pl. MSJ, Exh. 1 (Hearing Officer Determination (HOD)) at 1-11.

B.    C.G.

C.G. is an adult student who has been determined to be eligible for special-education and related services as a student with a disability under IDEA.  His parent, Plaintiff Green, filed a Due Process Complaint in February 2013, alleging that the District failed to conduct re-evaluations, develop and implement an IEP, and provide appropriate placement.  A hearing was held in May 2013, after which the Hearing Officer determined that the first issue was fully resolved and thus withdrawn, and that Plaintiff had satisfied his burden of proof on the remaining issues.  See R&R at 7; HOD at 17-29.

C.    L.J.

L.J. is a minor student who is eligible for services due to a learning disability.  His legal guardian, Plaintiff Smith, filed a Due Process Complaint in June 2013, and the due-process hearing was held in September of that year.  Smith alleged that, on numerous occasions, the District had failed to evaluate L.J. at his request.  The Hearing Officer determined that L.J. had

been denied a FAPE through the District's failure to evaluate him and awarded L.J. individualized tutoring by a certified teacher.  See R&R at 7-8; HOD 39-63.

D.    I.M.

I.M. is a minor student who is eligible for services due to a learning disability.  Her parent, Plaintiff Addison, filed a Due Process Complaint in February 2013, alleging that the District failed to: include her in an IEP meeting; re-evaluate I.M. upon request; conduct a formal, timely assessment of I.M.'s therapy needs; provide I.M., on four separate occasions, with an appropriate IEP; implement I.M.'s IEP; and place I.M. in a full-time special-education program. She sought placement in a private special-education school, compensatory education, and funding for various evaluations.  A two-day hearing was held in April 2013, after which the Hearing Officer determined that I.M. had satisfied her burden of proof on some, but not all, of these allegations.  While the Hearing Officer rejected the request for compensatory education, he did award I.M. some relief, including amending her IEP and providing extra-curricular instruction and tutoring, as well as additional evaluations.  See R&R at 8-10; HOD at 66-82.

E.    E.J.

Plaintiff James, parent of minor student E.J., filed a Due Process Complaint in June 2013, alleging that the District failed to: provide E.J. an appropriate, or any, educational placement in 2011-2012; provide an appropriate placement in 2012-2013; identify an appropriate placement at a June 2013 meeting; and adequately include E.J.'s parents in the decisionmaking process.  E.J. sought maintenance of his current educational placement, a meeting to revise his IEP, and compensatory education.  E.J. received a hearing in August 2013.  The Hearing Officer ruled in E.J.'s favor on all but the second issue and ordered that the District fund E.J.'s placement for the 2013-14 year.  See R&R at 10-11; HOD at 87-117.

F.   <u>A.D.</u>

Plaintiff Holman, legal guardian of minor student A.D., filed a Due Process Complaint in September 2013, alleging that the District failed to implement an IEP and provide him with an appropriate placement.  A.D. requested funding for an independent evaluation, an IEP meeting, and placement in a particular school program.  A hearing was held in December 2013, after which the Hearing Officer determined that the District had denied A.D. a FAPE by failing to implement the speech-language services portion of his IEP, and the Officer ordered the District to fund the requested assessment, as well as a year of speech-language services.  The Officer further determined that A.D. had not met the required burden of proof to support the claim that the District had failed to provide an appropriate placement.  <u>See</u> R&R at 11-12; HOD at 120-38.

G.   <u>Attorney Fees</u>

Following the conclusion of these administrative proceedings, Plaintiffs filed this action on November 10, 2014, and the case was subsequently referred to Magistrate Judge Kay for full case management.  <u>See</u> ECF No. 4.  Both sides thereafter filed Cross-Motions for Summary Judgment relating to fees and costs only.  On June 2, 2015, Magistrate Judge Kay issued his Report recommending that Plaintiffs' Motion be denied and Defendant's be granted.  Plaintiffs timely filed their Objections to the Report on August 13, 2015.

II.   **Legal Standard**

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered a recommended disposition, a party may file specific written objections.  The district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); <u>see also</u> <u>Winston & Strawn LLP v. FDIC</u>, 841 F. Supp. 2d 225, 228 (D.D.C. 2012) (court must conduct *de novo* review of objected-to portions of magistrate

judge's report and recommendation).  The district court may then "accept, reject, or modify the recommended disposition."  Fed. R. Civ. P. 72(b)(3).

## III.    Analysis

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  "Implicit" in IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child."  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982).  As a condition of receiving funding under IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of students with disabilities.  See 20 U.S.C. § 1413.

Of relevance to this case, IDEA confers on the Court discretion to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party" in an action under the Act.  See 20 U.S.C. § 1415(i)(3)(B)(i)(I).  This includes the authority to award fees to a party who has prevailed in an administrative due-process hearing. See Moore v. District of Columbia, 907 F.2d 165, 166 (D.C. Cir. 1990).

Plaintiffs brought such an action, seeking a total of $226,625.31 in legal fees and costs for their six IDEA matters.  See Compl. at 3 (Appendix).  The Magistrate Judge recommended significant reductions to this amount, arriving at a total award of $89,917.60 – roughly 40% of the requested fees.  See R&R at 31-36.  Plaintiffs raise five objections to the Report's recommendations: (1) the hourly rate of compensation is inappropriately low; (2) billed hours were improperly reduced in accordance with Plaintiffs' success rate; (3) settlement conference and work hours deemed "too remote in time" were improperly excluded; (4) expense charges

were improperly reduced; and (5) current, not historical, rates should have been used.  The Court

considers each objection in turn.

    A.  <u>The Hourly Rate</u>

    The issue at the heart of this case is what constitutes a reasonable hourly rate by which

the Court should calculate fee awards for IDEA matters in the District.  Plaintiffs object that the

Magistrate Judge recommended an inappropriately low rate.  Although its reasoning diverges

somewhat from the Report, the Court concurs that the rate is justified.

    *1. Recommendation and Objections*

    Fee awards under IDEA "shall be based on rates prevailing in the community in which

the action or proceeding arose, for the kind and quality of services furnished."  20 U.S.C.

§ 1415(i)(3)(C)).  The statute instructs that courts "shall reduce" the quantity of the award if it

"unreasonably exceeds the hourly rate . . . for similar services by attorneys of reasonably

comparable skill, reputation, and experience" in the community.  <u>Id.</u> at § 1415(i)(3)(F)(ii).

Beyond these dictates, the statute "provides no further guidance for determining an appropriate

fee award."  <u>Eley v. District of Columbia</u>, 793 F.3d 97, 100 (D.C. Cir. 2015).  Our circuit has

explained that the "fee applicant bears the burden of establishing entitlement to an award,

documenting the appropriate hours, and justifying the reasonableness of the rates," which entails

"produc[ing] satisfactory evidence—in addition to [their] attorney's own affidavits—that [their]

requested rates" are appropriate.  <u>Covington v. District of Columbia</u>, 57 F.3d 1101, 1107-09

(D.C. Cir. 1995).

    Applicants may "submit attorneys' fee matrices as one type of evidence that provides a

useful starting point in calculating the prevailing market rate" for attorneys' services.  <u>Eley</u>, 793

F.3d at 100 (internal quotation marks and citations omitted).  A fee matrix lays out hourly fees

charged by attorneys at various levels of experience in a particular geographic region or market for the same type of work.  "Fee matrices in general are 'somewhat crude,'" including "the Laffey matrix in particular," and "[f]or this reason, a fee applicant supplements fee matrices with other evidence such as surveys to update them; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications for handling similar cases."  Id. at 101.

The "most commonly used fee matrix is the 'Laffey matrix,'" id., which was set forth in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354, 371 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984).  By its own terms, the Laffey matrix applies only to "complex federal litigation" in the Washington, D.C., area.  Id. at 372.  Even within this constraint, moreover, there are multiple Laffey matrices.  The primary one is calculated by the United States Attorney's Office for the District of Columbia and is updated regularly to account for inflation using the Consumer Price Index.  A second Laffey matrix, commonly dubbed "enhanced Laffey," is adjusted for inflation using only the legal-services component of the Consumer Price Index, which has risen more swiftly than the general CPI.  See Eley, 793 F.3d at 101-02.

The Magistrate Judge here first determined that the enhanced Laffey rate was not appropriate for the litigation at issue.  See R&R at 20-23.  As for the primary Laffey rate, he noted that "IDEA cases can rarely be classified as complex federal litigation," id. at 24, and then conducted a separate analysis of the complexity of each of the six administrative proceedings. The Magistrate Judge ultimately recommended that in all but one of the matters, the Court

should use a rate equivalent to 75% of the primary Laffey rate.  See id. at 25-28.  He concluded

that the last of the six, however, deserved 100% of that rate.  See id. at 28.

Dissatisfied with this recommendation, Plaintiffs now mount a valiant, if ultimately

unsuccessful, effort to demonstrate that IDEA proceedings are "complex federal litigation"

meriting compensation at least at full primary Laffey rates.  They argue that IDEA litigation

requires an understanding of a diverse body of law, familiarity with the relevant regulatory

scheme, and subject-matter knowledge specific to special education.  See Obj. at 3-4.  In

addition, they contend that the lack of formal discovery in IDEA cases fosters unpredictability,

which, in their view, injects additional complexity to preparations for, and arguments at, due-

process hearings.  See id. at 4-5.  They point, moreover, to the six declarations attached to their

Objections, in which attorneys experienced in IDEA practice opine that such litigation is

sufficiently complex to warrant compensation at enhanced Laffey rates or close to it.  See id.,

Exhs. 3-7.  Finally, they recount two cases where respected "big law" firms, in litigating an

IDEA suit much like this one, billed more hours and consulted longer with experts than Plaintiffs

did here, and they conclude that "[l]awyers who are not experts in the field apparently find IDEA

litigation challenging, however competent they may be in general."  Id. at 5-6.  The Court will

examine the relevant law in this circuit and then address these contentions.

### 2.  *Leaving Laffey Behind*

At bottom, the question for the Court is whether primary Laffey rates, something less (as

the Magistrate Judge recommended), or something more (as Plaintiffs insist) should be used in

calculating the fee award here.  Recently, the D.C. Circuit declined to determine whether IDEA

proceedings are the type of litigation that is "sufficiently 'complex' to use either version of the

Laffey Matrix (and if so, which version of the Laffey Matrix is more appropriate)."  Eley, 793

F.3d at 105.  The Eley court nevertheless made clear that a district court may not begin its analysis from the premise that "some version of the Laffey matrix is presumptively reasonable" because "this reasoning flips the burden of persuasion on its head."  Id.  That burden, the court emphasized, may be satisfied only by a fee applicant's submission of "evidence that her requested rates are in line with those prevailing in the community for similar services, *i.e.*, IDEA litigation."  Id. at 104 (internal quotation marks and citation omitted; emphasis original).  Laffey is thus not the default rate for fees awarded pursuant to IDEA.  Rather, if a party wishes the Court to use the Laffey matrix, it must establish that its rates reflect what attorneys of comparable skill in the region generally charge for IDEA proceedings.

Eley seems, furthermore, to instruct that the relevant inquiry is whether IDEA proceedings as a class of litigation qualify as "complex federal litigation" to be compensated at one of the Laffey rates – rendering the Magistrate Judge's case-by-case approach improper.  And although the D.C. Circuit has yet to resolve this issue, recent concurring opinions buttress the Court's view that the eventual resolution must apply to IDEA cases as a whole.  See id. at 105 (Kavanaugh, J., concurring) ("I would simply add that, in my view, the United States' Attorney's Office Laffey matrix is appropriate for IDEA cases."); see also Price v. District of Columbia, 792 F.3d 112, 116-17 (D.C. Cir. 2015) (Brown, J., concurring) (opining that, because IDEA proceedings do not constitute complex federal litigation, "the Laffey Matrix rate . . . is also an irrelevant benchmark for administrative proceedings before a D.C. Public Schools hearing officer").

In the meantime, district courts within this circuit are split on whether Laffey applies to IDEA cases.  Compare Baker v. D.C. Pub. Sch., 815 F. Supp. 2d 102, 112-13 (D.D.C. 2011) ("This court has previously held that attorney's fees in IDEA actions are presumptively

reasonable if they conform to the <u>Laffey</u> Matrix . . .[and] has already rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation.") <u>with Huntley v. District of Columbia</u>, 860 F. Supp. 2d 53, 58 (D.D.C. 2012) ("[T]his case involves IDEA litigation, which is <u>not</u> complex federal litigation because most if not all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings.").  <u>See also</u> <u>McClam v. District of Columbia</u>, 808 F. Supp. 2d 184, 189 (D.D.C. 2011) ("Federal district courts in this circuit disagree whether <u>Laffey</u> rates should be applied in IDEA cases.").  After taking note of this disagreement, the Magistrate Judge determined that all but one of Plaintiffs' matters were insufficiently complex to warrant compensation at <u>Laffey</u> rates. Plaintiffs, as previously mentioned, rigorously dispute this.

A central problem with Plaintiffs' objection on this point, however, is that, at most, they suggest that IDEA proceedings are complicated <u>in some sense</u>.  But they do not establish that such matters are <u>complex federal litigation</u>, as they must if they wish the Court to use <u>Laffey</u> rates in calculating their award.  For <u>Laffey</u> did not purport to present a matrix for <u>all</u> fee awards under <u>any</u> statute.  Rather, the plaintiffs in that case sought an award under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, for costs incurred during lengthy Title VII litigation.  They proposed the schedule of fees that became the <u>Laffey</u> matrix and

> support[ed] their request with a barrage of data, including twenty-five attorney affidavits secured specifically for this litigation, information gleaned from affidavits filed in other cases, and fee data reflected in previous judicial decisions, . . . contend[ing] that this documentation establishes that (1) these are the prevailing rates in the community for lawyers of comparable skill, expertise and reputation in complex federal litigation and (2) the prevailing community practice is to charge fee-paying clients in employment discrimination cases the same rates that apply to other complex federal litigation.

Laffey, 572 F. Supp. at 371-72.  The critical question here, consequently, is whether IDEA proceedings can constitute "complex federal litigation," the linchpin of the Laffey matrix.

While neither Laffey nor any subsequent D.C. Circuit opinion has defined the precise contours of "complex federal litigation," the Supreme Court has indicated that civil-rights litigation – including challenges to unreasonable searches and seizures, school-desegregation cases, and employment-discrimination actions – as well as antitrust suits are all instances of such litigation.  See Blum v. Stenson, 465 U.S. 886, 893-94 (1984) (listing cases described in legislative history of § 1988 as "equally complex Federal litigation").  Plaintiffs could, perhaps, establish the applicability of the Laffey matrix by proffering evidence that IDEA proceedings are qualitatively similar to – or complex in the same ways as – these types of cases.

This they have not done.  Their submissions instead reflect only a pattern of district courts' here awarding Laffey rates in IDEA cases on some occasions.  This, of course, begs the question; after all, "the mere showing that a high hourly rate was approved in another case does not in and of itself establish" that such a rate is "reasonable."  Huntley, 860 F. Supp. at 58.

The Court ultimately does not believe that Plaintiffs have offered satisfactory proof that administrative IDEA proceedings constitute "complex federal litigation" for which Laffey rates would be appropriate.  In fact, some of Plaintiffs' arguments suggest the opposite.  For example, while the lack of formal discovery in IDEA matters may perhaps necessitate hours of hearing preparation, that preparation is different in kind from the preparation required for complex federal litigation, which involves depositions, interrogatories, requests for production, motions to strike, and the like.  The fact that respected "big law" firms – who, Plaintiff agrees, frequently engage in complex federal litigation – billed more hours in preparation for IDEA proceedings than did Plaintiffs' counsel proves little.  To begin, the Court has no idea about the complexity of

those particular cases, as compared to run-of-the-mill IDEA cases.  More important, even if the cases were similar, Plaintiffs' counsel's ability to handle IDEA matters in less time indicates only that successful IDEA practitioners, as one would expect, develop unique proficiencies not required for other complex federal litigation.  IDEA matters may not be simple – they may be quite complicated and may even be very labor intensive – but that does not render them "complex federal litigation" as that term is used in the context of fee awards, and specifically the Laffey matrix.

As other courts in this district have explained, IDEA proceedings are qualitatively dissimilar to most other complex federal litigation.  See Rooths v. District of Columbia, 802 F. Supp. 2d 56, 62-63 (D.D.C. 2011) ("Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law. It was presented in a reasonably informal setting to an administrative Hearing Officer in a two-hour hearing. . . . [so] a rate considerably below the Laffey maximum is appropriate.").  The fact that DCPS adjudicates more IDEA disputes than nearly every other jurisdiction – and that some of these disputes make their way to federal district courts – does not mean that the matters are "complex federal litigation."  Price, 792 F.3d at 117 (Brown, J., concurring).  And erroneously equating administrative IDEA proceedings with complex federal litigation may engender serious adverse consequences.  See, e.g., id. at 118 (Brown, J., concurring) ("[W]hen courts are too generous in awarding fees, they create an incentive for needless conflict and enrich IDEA lawyers at the expense of public schools, and ultimately the very children the IDEA seeks to protect.").

But if not Laffey, then what rates should the Court use?  One court in this district explained that "[t]he District has established its own guidelines for hourly rates for IDEA

lawyers in the District of Columbia . . . [and s]ome courts have applied rates similar to these.

For example, in <u>Rooths</u>, the court awarded fees at an hourly rate equal to three-quarters of the

<u>Laffey</u> rate, rates almost identical to the District's guideline rates."  <u>McClam</u>, 808 F. Supp. 2d at

189-90.  The notion that a rate equivalent to 75% of <u>Laffey</u> rates approximates the prevailing

market rate for IDEA administrative proceedings finds support in the vast number of district

court cases awarding IDEA fees at this rate.  This does not imply that IDEA proceedings are

75% as complex as "complex federal litigation"; the use of this rate means only that the numbers

given by 75% of <u>Laffey</u> happen to reflect the prevailing market rate in the community for IDEA

proceedings.

 As the District points out, in recent years, scores of district courts here have awarded

attorney fees in IDEA matters using a 75%-of-primary-<u>Laffey</u>-matrix rate.  <u>See, e.g.</u>, <u>Brown v.

District of Columbia</u>, 80 F. Supp. 3d 90, 98 (D.D.C. 2015); <u>Cook v. District of Columbia</u>, -- F.

Supp. 3d --, 2015 WL 4483958, at *4 (D.D.C. July 22, 2015); <u>Briggs v. District of Columbia</u>, 73

F. Supp. 3d 59, 63-64 (D.D.C. 2014); <u>Douglas v. District of Columbia</u>, 67 F. Supp. 3d 36, 42-43

(D.D.C. 2014); <u>McAllister v. District of Columbia</u>, 53 F. Supp. 3d 55, 60-61 (D.D.C. 2014);

<u>Haywood v. District of Columbia</u>, No. 12-1722, 2013 WL 5211437, at *6 (D.D.C. Aug. 23,

2013); <u>Davis v. District of Columbia</u>, 864 F. Supp. 2d 110, 119 (D.D.C. 2012); <u>Flores v. District

of Columbia</u>, 857 F. Supp. 2d 15, 22 (D.D.C. 2012); <u>Huntley</u>, 860 F. Supp. 2d at 59-60; <u>Petway

v. District of Columbia</u>, 858 F. Supp. 2d 70, 78 (D.D.C. 2012); <u>Sykes v. District of Columbia</u>,

870 F. Supp. 2d 86, 96-97 (D.D.C. 2012); <u>Wood v. District of Columbia</u>, 864 F. Supp. 2d 82, 92

(D.D.C. 2012).  The sheer number of these cases indicates that awarding 75% of <u>Laffey</u> will not,

contrary to Plaintiffs' apocalyptic prediction, dissuade all competent counsel in the region from

taking such cases.  <u>Accord</u> <u>Brown</u>, 80 F. Supp. 2d at 98 ("Because Hecht continues to handle

IDEA cases despite this Court on multiple occasions awarding her fees equaling 75% of Laffey rates, these rates presumably must be adequate to attract competent counsel."). The Court, accordingly, will adopt the Magistrate Judge's recommendation to use 75% of Laffey rates in calculating the fee award in this case.

In their Objection, Plaintiffs also argue that even if the Court decides to adopt the Magistrate Judge's 75% recommendation, it should use rates at 75% of the enhanced Laffey matrix. See Obj. at 10. But the Court's determination that 75% of primary Laffey is equivalent to the "prevailing market rate" in the community for IDEA matters requires the corollary that some other, higher amount – e.g., 75% of enhanced Laffey – would overcompensate attorneys in such matters. Furthermore, "in this circuit, the rates contained in the [primary] Laffey Matrix are typically treated as the highest rates that will be presumed to be reasonable when a court reviews a petition for statutory attorneys' fees," and district courts typically "declin[e] to apply enhanced Laffey rates." Sykes, 870 F. Supp. at 94-95 (internal quotation marks and citation omitted).

Finally, Plaintiffs point to Eley v. District of Columbia, 999 F. Supp. 2d 137 (D.D.C. 2013), overruled on other grounds, 793 F.3d 97 (D.C. Cir. 2015), which determined that a court may not reduce a fee award based on the lack of complexity of that particular case. See id. at 160 (applying Perdue v. Kenny ex rel. Winn, 559 U.S. 542 (2010), which held that courts may not enhance a fee award based on the complexity of that particular case). Perdue reasoned that "the novelty and complexity of a case . . . are fully reflected in the number of billable hours." Id. at 548. But that case was concerned with courts' altering the "lodestar" amount – "the number of hours worked multiplied by the prevailing hourly rates" – to reflect the relative complexity or simplicity of a particular case. Id. at 546. Its holding therefore has no bearing on the

determination of the prevailing hourly rate used in calculating that "lodestar" figure.  The Court, in sum, will employ the 75%-of-<u>Laffey</u> rate.

    B.  <u>Rate Cuts for Unsuccessful Claims</u>

    Plaintiffs next object that the Magistrate Judge recommended "across-the-board cuts" to their submitted fees "to account for unsuccessful claims" for three plaintiffs.  <u>See</u> Obj. at 12. IDEA permits the Court to award attorney fees only to "prevailing parties," 20 U.S.C. § 1415(i)(3)(B), and the Magistrate Judge found that the parents of students I.M., E.J., and A.D. had only partially prevailed on their claims.  He thus reduced these Plaintiffs' overall fees by various percentages: I.M.'s by 50%, E.J.'s by 30%, and A.D.'s by 50%.  <u>See</u> R&R at 8-12.

    When awarding attorney fees under IDEA, the D.C. Circuit has "articulated a three-part test for determining prevailing-party status: (1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief."  <u>District of Columbia v. Straus</u>, 590 F.3d 898, 901 (D.C. Cir. 2010).  This pronouncement applies with equal force to administrative proceedings, and "whether [a] Plaintiff is a 'prevailing party' for the purpose of 1415(i)(3)(B) is a question of law that this court will decide based on the administrative record and the hearing officer's decision."  <u>McCrary v. District of Columbia</u>, 791 F. Supp. 2d 191, 196 (D.D.C. 2011) (internal quotation marks and citation omitted).  The Court addresses each of the three recommended reductions for partially prevailing status in turn.

    In their briefing, Plaintiffs acknowledge that I.M. prevailed on only 3 of her 6 claims for relief but argue that more than half of her attorney's time was devoted to the successful claims. <u>See</u> Pl. Reply at 15.  The Court, however, need not undertake such parsing of the particular claims or the attorney's efforts here; "[g]iven the interrelated nature of the facts and legal

theories in this case," the Court enjoys discretion to "refus[e] to apportion the fee award

mechanically on the basis of [Plaintiff's] success or failure on particular issues." Hensley v.

Eckerhart, 461 U.S. 424, 438 (1983).  As Plaintiffs concede that they succeeded on only half of

the claims pertaining to I.M., the Court will reduce the fee award here by 50%.

 In E.J. and A.D.'s cases, Plaintiffs do not agree that they only partially prevailed.  In the

former, Plaintiffs argue that they succeeded on both of the two issues raised – not three of the

four issues, as the Magistrate Judge found.  See Reply at 14.  The Hearing Officer did identify

four issues, see HOD at 89, and grouped two of those four together in his discussion of the case.

As the Magistrate Judge correctly noted, the Hearing Officer found in Plaintiffs' favor on three

of the four – or two of three, depending on how the issues are grouped.  See R&R at 11.  The

Court thus believes that, in light of the Hearing Officer's resolution, the recommended 30%

reduction for E.J. is reasonable.

 In A.D.'s case, Plaintiffs assert that two alternative claims were raised, but "[b]y

prevailing on one theory, the Plaintiff won all her requested relief."  See Reply at 14-15.  It is

true that the two issues were pled in the alternative, see HOD at 122 n.5, but the Hearing Officer

found that A.D. had succeeded only partially on the first issue, so it went on to address the

second as well.  See id. at 135.  The Officer ultimately concluded that A.D.'s second issue was

not meritorious, see id. at 137, so the Magistrate Judge did not err in determining that A.D. was

not a fully prevailing party.  The Court nevertheless believes a 50% rate reduction is excessive,

given A.D.'s alternative-pleading approach and the fact that he received most of the relief

requested.  Id. at 137-38; see also Hensley, 461 U.S. at 435 (explaining that, in some cases, "the

district court should focus on the significance of the overall relief obtained by the plaintiff in

relation to the hours reasonably expended on the litigation").  A 30% rate reduction sufficiently

accounts for A.D.'s status as a partially prevailing party, so the Court will adopt that rate reduction, instead of the 50% recommended by the Magistrate Judge.

Finally, in both I.M.'s and E.J.'s cases, Plaintiffs believe charges for work related to unsuccessful theories or claims have already been removed.  The Magistrate Judge, however, found it "impossible to separate out the charges for legal work related to issues on which Plaintiff did not prevail" based on the billing records submitted for I.M. and E.J., and the Court agrees.  <u>See</u> R&R at 10 n.4, 11 n.5.  Plaintiffs have not met their burden to prove that a lesser fee reduction would be appropriate due to prior reductions made by the parties themselves.  "[T]he district court has discretion in determining the amount of a fee award," and here the Court will decline to presume, absent support in the record, that Plaintiffs' reductions sufficiently reflect their partially prevailing status.  <u>See</u> <u>Hensley</u>, 461 U.S. at 437.  The Court will thus adopt the Magistrate Judge's rate-reduction recommendations for I.M. and E.J. and will reduce A.D.'s award by 30%, not 50%.

C.  <u>Exclusion of Hours</u>

Plaintiffs also challenge the Magistrate Judge's exclusions of specific hours from their total hours billed.  The Court examines the different categories separately.

1.  *Settlement Conferences*

Plaintiffs first object to the exclusion from all six cases of various hours that the Magistrate Judge identified as time spent in settlement conferences.  <u>See</u> Obj. at 12-13; R&R at 13-18.  IDEA, both sides agree, prohibits compensation for "resolution sessions."  <u>See</u> 20 U.S.C. §§ 1415(f)(1)(B)(i), (i)(3)(D)(iii); <u>D.D. ex rel. Davis v. District of Columbia</u>, 470 F. Supp. 2d 1, 2 (D.D.C. 2007).  In Plaintiffs' view, however, the meetings excluded by the Magistrate Judge were not such statutorily excludable "resolution sessions."

According to the statute, a resolution session must be convened by a local educational agency within fifteen days of receiving notice of a student's complaint and before a due-process hearing, and it must be attended by the student's parents, members of their IEP Team who have "specific knowledge of the facts identified in the complaint," and an agency representative with "decision-making authority."  See 20 U.S.C. §§ 1415(f)(1)(B)(i)(I)-(II).  The local educational agency may not be represented by an attorney unless the parent is also represented by counsel, and the resolution session must discuss the complaint and provide the agency an opportunity to resolve the issues therein.  Id. §§ 1415(f)(1)(B)(i)(III)-(IV).

For each of the six Plaintiffs, the Magistrate Judge excluded 2-3 hours that were identified in Plaintiffs' billing records as time spent traveling to or attending "settlement conferences."  See, e.g., Pl. MSJ, Exh. 2 (Billing Records) at 3 (attorney for S.R. reported spending 1.5 hours on "Travel to and from the scheduled settlement conference" and 0.5 hours "[p]articipat[ing] in the schedule settlement conference," where attorney "[d]iscussed DCPS' position on the issues alleged, and what they might be willing to offer by way of settlement," and "[d]iscussed the settlement offer with the client"); see also id. at 39 (3.0 hours billed for settlement activities for C.G.); id. at 59 (2.3 hours billed for settlement activities for L.J.); id. at 71 (2.5 hours billed for settlement activities for I.M.); id. at 112 (3.0  hours billed for settlement activities for E.J.); id. at 129 (2.5 hours billed for settlement activities for A.D.).

Because a "settlement conference" may qualify as a "resolution session" under IDEA, Plaintiffs' billing records must clearly establish that the meetings so identified are not statutorily excludable sessions.  They do not.  Rather, the records indicate that the so-called "settlement conferences" satisfied at least some of the statutory requirements for resolution sessions, creating doubt as to whether compensation for those hours is permissible.

Plaintiffs assert that these conferences were sham resolution sessions, arranged by DCPS but not staffed with relevant members of the students' IEP teams or agency representatives with decisionmaking authority, but they point to nothing <u>specific</u> in the record to demonstrate that the meetings in question suffered from these deficiencies.  <u>Cf.</u> Obj., Exh. 1 (Statement of Nicholas Ostrem) at 1 (stating generally that in his experience, DCPS often invites parties to meetings it calls resolution sessions "but fails to staff and conduct such meetings in accordance with the IDEA").  It is Plaintiffs' burden to prove their entitlement to compensation for the hours listed, and here the Court cannot determine, based on the evidence presented, that the hours related to "settlement" may be reimbursed under IDEA.  <u>Accord</u> <u>Haywood v. District of Columbia</u>, No. 12-1722, 2013 WL 5211437, at *8 (D.D.C. Aug. 23, 2013) (refusing to "conclu[de] based solely on the invoice description" that time labeled as "settlement negotiations" was compensable where "Plaintiffs provide no authority, or explanation, for their contention that the meeting in question was not a resolution meeting for which fees are not compensable under the statute" and "have not met their burden of providing sufficient detail to allow the court to make an independent determination that this time was properly billed").  The Court will therefore adopt the Magistrate Judge's recommendation to exclude hours billed for "settlement conferences."

2.  *Hours "Distant in Time" from the Complaint*

A second category of exclusions to which Plaintiffs object consists of those identified by the Magistrate Judge as "too far removed in time" from the filing of the complaint or the issuance of the HOD.  <u>See</u> Obj. at 13.  The Magistrate Judge excluded 30.9 hours that predated the filing of E.J.'s complaint, 15.3 hours that predated the filing of A.D.'s complaint, and 2.3 hours that postdated the issuance of the HOD in S.R.'s case and were "not related to ensuring compliance" with it.  <u>See</u> R&R at 13, 16-17.  Plaintiffs maintain that "the substance of that

work" in all three cases was "related to the litigation" and renders those hours compensable.  See Obj. at 13.

Courts have indeed declined to award compensation under IDEA for "[a]ctivities too remote in time or unrelated to the proceeding."  Rapu v. D.C. Public Schools, 793 F. Supp. 2d 419, 427 (D.D.C. 2011).  At the same time, there is no widely accepted rule mandating that work prior to the filing of a complaint is necessarily too remote to be compensable; on the contrary, "courts in this district have found that a year in advance of a hearing is an entirely reasonable window of time to be engaging in productive work . . . based on a showing by the plaintiff that each charge was tied to a particular hearing."  Id. (internal quotation marks and citation omitted); see also Lax v. District of Columbia, No. 04-1940, 2006 WL 1980264, at *4 (D.D.C. July 12, 2006) (noting that "it often takes up to a year for an administrative IDEA case to be resolved," so "the time spent over the course of a year for a particular client is not necessarily too remote" to be compensated).

The Court agrees that work performed in the year preceding an IDEA hearing is not "too remote in time" to be compensable under the statute, so long as Plaintiffs establish that such work is reasonably related to the proceeding.  Using this framework, the Court does not believe the charges in these three cases were so temporally remote as to warrant their *per se* exclusion.

E.J.'s complaint was filed on June 18, 2013, and the hearing was held on August 20 and 23, 2013.  See HOD at 87, 89.  The Magistrate Judge recommended excluding most of the charges dated between January 9, 2013, and the filing of the complaint.  See R&R at 16-17. Although these charges fall within a year of E.J.'s hearing, they were, as the Report notes, unnecessary for the filing of the due-process complaint.  See id. at 17; see also Role Models of America, Inc. v. Brownlee, 353 F.3d 962, 972-74 (D.C. Cir. 2004) (denying reimbursement of

administrative-fee charges that were not explained).   Much of counsel's work during this time

appears related to a different matter – specifically, a separate court proceeding regarding E.J.'s

post-arrest detention and his subsequent transfer to a psychiatric residential-treatment facility.

Plaintiffs have not adequately explained how this work is related to the issues raised in E.J.'s

due-process complaint, stating only that these charges were for "investigating possible claims,

[and] determining the bounds of the disputes."  See Statement of Nicholas Ostrem at 2.  Plaintiffs

have not adequately explained the relationship between these charges and the goals of E.J.'s due-

process proceedings, so the Court will adopt the Magistrate Judge's recommendation to exclude

these 30.9 hours.  It further adopts the Magistrate Judge's recommendation that the 4 hours billed

prior to the filing of E.J.'s complaint that were spent on work directly related to the IDEA claim

here will be compensated.  See R&R at 17.

A.D.'s complaint was filed on September 23, 2013, and the hearing was held on

December 3, 2013.  See HOD at 120-21.  The Court declines to adopt the Magistrate Judge's

recommendation to exclude all charges dated between December 3, 2012, and the filing of the

complaint, as they also correspond to work performed within the year preceding A.D.'s hearing.

See R&R at 17.  These charges, which are well explained in the Plaintiffs' invoice, are for work

such as obtaining and reviewing the student's records, meeting with the student's school,

corresponding with DCPS about the student's testing and special education, and consulting with

the client.  See Billing Hours at 124-28.  The Court thus determines that they are related to the

due-process hearing and are not too remote in time or substance to be compensable under IDEA.

S.R.'s hearing was held on July 24, 2013, and the HOD was issued on August 2, 2013.

See HOD at 1.  The Court will decline to adopt the Magistrate Judge's recommendation to

exclude all charges after April 29, 2014, the date that corresponded to counsel's "[r]eceipt and

review of the finalized IEP." <u>See</u> R&R at 13; Billing Hours at 31.  Though these charges are dated more than eight months after the issuance of the HOD, they are neither unexplained nor unreasonable.  The work documented involves reviewing placement letters from DCPS and further correspondence with DCPS regarding the student's placement, an issue central to the remedy prescribed by the HOD.  <u>See</u> Billing Hours at 31-34; Statement of Nicholas Ostrem at 2 (explaining that these charges "were for work investigating proposed school locations" because "[t]he HOD in the S.R. Case ordered the development of an IEP, and by law every IEP must identify the location of services").  It is "reasonable to engage in work to ensure compliance with the . . . HOD," <u>Rapu</u>, 793 F. Supp. 2d at 427, and these activities are reasonably targeted at ensuring such compliance here.  <u>See</u> HOD at 19-20 (ordering DCPS to "discuss and determine an appropriate public or non-public school/program in which to place the Student").  For these reasons, the Court will not adopt the Magistrate Judge's recommendations regarding this latter category of exclusions as to S.R. and A.D., but it will adopt his recommendations as to E.J.'s pre-complaint exclusions.

   D. <u>Costs</u>

  Courts usually reimburse attorneys for copying, faxing, and postage fees incurred during IDEA litigation.  <u>See</u> <u>Holbrook v. District of Columbia</u>, 305 F. Supp. 2d 41, 46 (D.D.C. 2004).  Plaintiffs assert that they satisfied their burden of proof on the expense charges incurred for copying, faxes, and mileage traveled in connection with these proceedings because the District did not object to their proposed reimbursement rates.  <u>See</u> Obj. at 14.  But the Magistrate Judge correctly noted that Plaintiffs had failed to prove that they actually incurred $0.25 per page for copying and $1.00 for faxing, and the District's decision not to offer "rebuttal evidence" in no way alters Plaintiffs' burden of proof.  <u>See</u> R&R 30.  Plaintiffs maintain that the D.C. Superior

Court generally reimburses court-appointed special-education attorneys for printing and copying at a rate of $0.25 per page.  See Statement of Nicholas Ostrem at 2.  Courts in this district, however, have held that $0.25 per page is an excessive rate, see McClam, 808 F. Supp. 2d at 190-91, and the Court agrees.   The Court, accordingly, will adopt the Magistrate Judge's recommendation to reimburse copying and faxing at a rate of $0.15 per page.  See id. at 91 (explaining that $0.15 is a reasonable rate for copying and faxing in D.C.).  And, as did the Magistrate Judge, the Court will adopt Plaintiffs' proposed mileage reimbursement rate of $0.56 per mile.  Hence the Court does not disturb any of the Magistrate Judge's recommendations as to Plaintiffs' costs.

E.  Use of Current Rates

Plaintiffs also seek compensation at "current hourly rates to account for delays in payment."  Obj. at 14.  The Supreme Court has condoned the adjustment of rates where compensation is awarded "several years after the services were rendered."  Missouri v. Jenkins, 491 U.S. 274, 283-4 (1989).  Here, however, the Magistrate Judge determined that the time elapsed between the services rendered by Plaintiffs' counsel and the Court's award of fees was not a "long period[] of delay" meriting such adjustment, see R&R at 18, and the Court concurs. All of the charges billed were incurred in the last three years, and during that time Plaintiffs were advancing their claims through the administrative process in a timely fashion – with no indication of undue delay caused by the District, the Hearing Officers, or this Court.  Treating the normal duration of an IDEA proceeding as a compensable delay would contravene a seminal principle in IDEA-fee litigation – viz., that awards ought not bestow windfalls upon attorneys. See Save Our Cumberland Mountains, Inc. v. Hodel, 857 F.2d 1516, 1519 (D.C. Cir. 1988).

Plaintiffs point to a few cases in this district in which plaintiffs received current rates for fee awards in IDEA litigation.  Of course, none of these cases is binding on this Court.  Nor does the Court find them persuasive.  For example, in <u>Petties v. District of Columbia</u>, No. 95-0148, 2009 WL 8663462 at *3-4 (D.D.C. Oct. 20, 2009), the court awarded current rates presumably to compensate for a delay caused by the defendants, who had initiated additional fee litigation in which they ultimately did not prevail.  None of the other cases cited by Plaintiff suggests that current rates should be applied in calculating <u>all</u> fee awards under IDEA.  The D.C. Circuit has been clear, moreover, that district courts "exercise their discretion" in awarding attorney fees, so while a "delay in receipt of payment . . . <u>may</u> be incorporated" in a fee award, the Court is under no obligation to do so.  <u>See</u> <u>Copeland v. Marshall</u>, 641 F.2d 880, 893 (D.C. Cir. 1980) (emphasis added).

Finally, Plaintiffs contend that the District habitually avoids paying attorney fees, <u>see</u> Obj. at 15, but they offer scant evidence demonstrating that the District either has previously been or is now likely to be recalcitrant in paying the fees ordered by the Court.  Plaintiffs' unsubstantiated fears about delayed payment provide no basis for the substantial increase in rates they request.  The Court, consequently, will adopt the Magistrate Judge's recommendation and use the rates applicable at the time the services here were rendered.

F.   <u>Calculation of Awards</u>

The analysis complete, the Court moves on to the arithmetic.  The Court calculates Plaintiffs' awards based on the foregoing analysis, in addition to that contained in the Magistrate Judge's Report to which Plaintiffs have not objected.

For C.G., L.J., and I.M., the Court will adopt the Magistrate Judge's recommended award amounts: The Court awards $19,298.71 for fees and costs to C.G.; $12,035.30 to L.J.; and $11,806.01 to I.M..

For S.R., the Court will award the Magistrate Judge's recommended $19,418.26, plus an additional amount for the 2.3 hours of post-HOD work improperly excluded, billed at 75% of the 2013-2014 USAO Laffey rate,[1] or $221.25 per hour.  This additional award of $508.88 brings the total to $19,927.14.

For E.J., the Court will use 75% of Laffey rates, rather than the full Laffey rates as the Magistrate Judge did; in all other respects, the award remains the same.  Using the 75%-of-Laffey rates, E.J.'s award now totals $16,426.47.

Lastly, for A.D., the Court adds an additional 15.3 hours for work predating the filing of the complaint that the Magistrate Judge improperly excluded, and it imposes a 30% reduction for A.D.'s partially prevailing status, rather than the recommended 50% reduction.  The additional 15.3 hours – 5.5 of which are for travel and 9.8 of which are for legal work – add $2,743.70 to the award.  This additional amount is added to the Magistrate Judge's pre-reduction award of $10,883.83, and the combined $13,627.53 is then reduced by 30%.  The Court subsequently adds the costs, as calculated by the Magistrate Judge, and A.D.'s resulting award is $9,664.97.

The grand total for all six Plaintiffs, therefore, is $89,158.60, as opposed to the $89,917.60 recommended by the Magistrate Judge.

---

[1] The USAO Laffey Matrix for the years 2003-2014 can be found at http://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix%202014.pdf. The Court here uses the rates for attorneys with 4-7 years' experience, as recommended by the Magistrate Judge.

**IV.      Conclusion**

For the reasons stated herein, the Court will substantially adopt Magistrate Kay's June 2, 2015, Report and Recommendation, granting in part and denying in part Plaintiffs' Motion for Summary Judgment and granting in part and denying in part Defendant's Cross-Motion for Summary Judgment.  The Court will issue a contemporaneous Order to that effect.


/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 28, 2015